UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| David McGee, et al.,     Plaintiff and     Intervenor-Plaintiffs, | : : : : |
| v. | :    File No.   1:04-CV-335 : |
| Steven Gold, Robert Hofmann, Keith Tallon, Celeste Girrell, John Gorczyk, Kathleen Lanman, Michael O'Malley, Anita Carbonnel, Stuart Gladding, Daniel Florentine, Raymond Flum, and Carol Callea,     Defendants. | : : : : : : : : : : |
| Jacob Sexton,     Plaintiff, | : : : |
| v. | :    File No.   1:05-CV-231 : |
| Robert Hofmann, Keith Tallon,     Defendants. | : : : |

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff David McGee, a Vermont inmate proceeding *pro se*, initiated this action claiming that he had suffered physical and emotional harm as a result of 24-hour lighting in Vermont prisons.  Because McGee had been transferred to a facility in Kentucky, his initial complaint for injunctive and declaratory relief was dismissed as moot.  McGee has since been allowed to amend

his complaint to claim damages.  McGee has also added a claim for inadequate access to the courts.

After McGee initiated this action, over 50 Vermont inmates moved to intervene as plaintiffs with respect to the constant illumination claim.  Another inmate, Jacob Sexton, has filed his own constant illumination claim.  At a hearing on April 17, 2006, attorneys from the Vermont Office of the Defender General agreed to enter appearances on behalf of McGee and the intervenor-plaintiffs.  For the reasons set forth below, McGee's access to the courts claim is DISMISSED without prejudice, and this case is CONSOLIDATED with Sexton v. Hofmann, File No. 1:05-CV-231.

I.  Access to the Courts

McGee's amended complaint claims that inmates at his Kentucky facility were denied direct access to a law library between September, 2004 and July, 2005.  Instead of being allowed to access the books themselves, inmates were allegedly required to specify books and pages for photocopying.  From February, 2005 to July, 2005, inmates were allowed to sign books out for up to three days, but were denied an index of what books were available.  McGee

2

further claims that requests for copies were often either delayed or ignored.

A new law library opened at the Kentucky facility in August, 2005, but McGee claims that "deficiencies and restrictions continue to present barriers to adequate access to resources." For example, the new facility is allegedly missing any state or federal case law for the past three and a half years. McGee also claims that the computers are inadequate, the library hours are insufficient, and that the charges for copying legal materials are excessive.

McGee specifies four instances of injuries resulting from his alleged denial of access to legal materials. First, he cites the instant case, claiming that inadequate facilities and excessive costs have prevented him from adequately presenting his claims. Second, McGee argues that he has been hindered in his ability to bring claims with respect to the mishandling of his personal property, but concedes that he has been able to file an action on this issue in Vermont state court. Third, he claims that he has been unable to bring an action with respect to his optometry care, but again concedes that he

eventually filed a "minimally researched" claim in state court.  Finally, McGee contends that he has been unable to challenge his prison's new policy of charging inmates for medications.

It is well settled that prisoners have a constitutionally protected right to access the courts. See Bounds v. Smith, 430 U.S. 817, 821 (1977).  The Supreme Court has held that this right requires prison officials to "assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."  Id. at 828.  In Lewis v. Casey, 518 U.S. 343, 355 (1996), the Supreme Court limited the broad holding in Bounds, stating that prisons need only provide the tools inmates need to "attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement."  The Lewis Court reasoned that while inmates are entitled to meaningful access to the courts, they are not guaranteed "the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims."  Lewis, 518

U.S. at 355.  Any limitation on a prisoner's capacity to litigate beyond a challenge to his sentence or a civil rights claim to "vindicate 'basic constitutional rights' . . . is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration."  Id.

The Lewis Court also held that a prisoner claiming a denial of access to legal materials must show an actual injury, a requirement that "derives ultimately from the doctrine of standing."  Id. at 349.  For example, an inmate might show that "a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known.  Or that he suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint."  Id. at 351.  The Court added that, in order to show actual injury, the inmate must "demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded."  Id. at 353.

In this case, McGee has been able to bring his

5

claims, have his motions ruled upon by the Court, and has survived a motion to dismiss by the defendants.  To the extent that he has needed extra time to submit his filings, his requests have been granted.  Furthermore, the Court has appointed counsel to represent him, thereby alleviating his need to conduct timely legal research and respond to filings by the opposing parties. Consequently, with respect to this case, McGee cannot show the type of injury required for a denial of access to courts claim.

McGee's three remaining injury claims also fall short of stating a legally sufficient claim.  In two of the three cases, McGee admits that he has been able to file complaints in state court.  There is no indication that those cases have been dismissed, or that any such dismissal was due to McGee's inability to adequately research his claims.

As to the fourth proposed claim, pertaining to the sale of prescription medications in prison, McGee states that he knows the claim is likely to be a constitutional violation, but that he does not have the opportunity or resources to research his claim.  Specifically, McGee

alleges that the demands of his other cases, combined with the inadequate library facilities, have deprived him of the change to "even cursorily research" his claim. The fact that McGee has multiple litigations pending, and that he is therefore too busy to navigate the allegedly inefficient library system at the Kentucky facility, will not support an access to courts claim.  Furthermore, it appears from the complaint that the library facilities in Kentucky have improved since August, 2005, and that McGee now has direct access to computers as well as state and federal case law.

Reading McGee's complaint liberally, and accepting his allegations as true, the Court should conclude that he has failed to set forth the type of injuries required for a denial of access to courts claim.  His allegations in this regard should, therefore, be DISMISSED.  This dismissal should be without prejudice, since it may become evident at some future date that McGee has been actually harmed by the alleged inadequacies at the Kentucky facility.

II.  Consolidation

As noted above, McGee's primary claim in this case

has been that certain Vermont prisons use 24-hour illumination, and that this constant lighting in cells causes physical and emotional harm to prisoners. Several months after McGee filed his complaint, Vermont inmate Jacob Sexton filed suit claiming that constant illumination in his cell caused him "pain and psychological torment." File No. 1:05-CV-231 (Paper 3 at 4). Because of the factual similarities of the cases, the McGee and Sexton are hereby CONSOLIDATED pursuant to Fed. R. Civ. P. 42(a). Consequently, counsel for McGee and the intervenor-plaintiffs shall also serve as counsel for Sexton.

## Conclusion

For the reasons set forth above, I recommend that McGee's claims that he has been denied access to the courts (Amended Complaint, Count Two) be DISMISSED without prejudice.[1] The remainder of the case is hereby CONSOLIDATED with the case of Sexton v. Hofmann, File No. 1:05-CV-23. For docketing purposes, the case of McGee v. Gold, File No. 1:04-CV-335, is designated as the lead

---

[1] Counsel has been appointed in this case strictly for the purpose of litigating the constant illumination issue. Therefore, any objection to this Report and Recommendation must be filed *pro se.*

8

case.  All filings pertaining to Sexton from this point forward shall be filed in the lead case.

Dated at Burlington, in the District of Vermont, this 21st day of April, 2006.

/s/ Jerome J. Niedermeier
Jerome J. Niedermeier
United States Magistrate Judge

Any party may object to this Report and Recommendation within 10 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  See Local Rules 72.1, 72.3, 73.1; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and 6(e).