UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

David McGee, et al.          :
        Plaintiffs,          :
                             :
    v.                       :      File No. 1:04-CV-335
                             :
Robert Hofmann,              :
Commissioner, Vermont        :
Department of Corrections,   :
        Defendant.[1]        :

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
(Papers 181 and 187)

This case focuses on the use of 24-hour lighting in
Vermont prison cells.  The plaintiffs are inmates in the
custody of the Vermont Department of Corrections, and
pending before the Court is their motion for class
certification.  Prior motions for class certification
were denied because the plaintiffs were proceeding *pro
se*.  On February 10, 2006, the Court appointed counsel to
represent the plaintiffs on their claims for injunctive
relief.  Counsel has now renewed the plaintiffs' request
for certification as a class.  For the reasons set forth

---

[1]  In their last several filings, both parties have identified Robert
Hofmann as the lone defendant in this case.  This may be because the
current motions only pertain to prospective injunctive relief, and Hofmann
is the current Commissioner of the Vermont Department of Corrections.
Nonetheless, this case also has a damages component, and the operative
amended complaint (Paper 99) lists several defendants in addition to
Hofmann.  In the future, rather than tailoring the caption to the form of
relief being addressed at the time, the parties are requested to
incorporate all defendants in their captions and discussions.

below, I recommend that the motion for class certification (Paper 181) and amended motion for class certification (Paper 187) be GRANTED.[2]

<u>Factual Background</u>

This case was initiated by David McGee, who claimed to be filing the complaint on behalf of himself and "a minimum 700" other inmates who were being subjected to 24-hour lighting in their Vermont prison cells.  (Paper 6 at 2).  McGee claimed that certain cells contain "a built-in lighting fixture which contains either a 5-watt or 7-watt twin tube compact fluorescent light bulb which remains on 24-hours per day.  These 24-hour lights are referred to as 'security lights.'"  <u>Id.</u> at 7.  The security lights are allegedly located "within 3 ft. of the head of the top bunk occupant," but "[t]he light is equally bright in all parts of the cell . . . .  The security light is so bright that the main cell lights are seldom voluntarily used."  <u>Id.</u> at 8.

McGee alleged that exposure to constant light has caused him "grave sleeping problems," including

---

[2]  The Court expresses no opinion as to whether the plaintiffs may be entitled to injunctive relief under narrow provisions of the Prison Litigation Reform Act, 18 U.S.C. § 3626(a)(1)(A).

difficulty falling asleep; restless sleep; frequent awakening during the night; severe headaches; painful eye strain; an increase in cold and flu-like symptoms; and exacerbation of his "existing depression, anxiety and bipolar disorders." Id. at 8-9.  He also "fears that exposure to constant illumination threatens to cause grave and imminent health problems in the future, including deadly hormone imbalances and certain types of cancer." Id. at 9.

In support of his claims of future harm, McGee referenced several medical and science journals for the proposition that constant exposure to light suppresses the body's production of melatonin, a hormone that assists in fighting off cancer. Id. at 10.  Ultimately, McGee concluded that "[t]he threat of harm from constant illumination is so severe it violates contemporary standards of decency and no person aware of the threat would willingly expose themselves to such a risk." Id. at 10-11.  McGee also argued that constant illumination is not justified by penological concerns, and cited five other Vermont correctional facilities where personnel allegedly "use flashlights, not constant illumination, to

3

conduct checks of inmates."  Id. at 14.

Since McGee filed his initial complaint, over 50 inmates have moved to be added as plaintiffs in this case.  Another inmate, Jacob Sexton, filed his own lawsuit, and his case has since been consolidated with McGee's.  The initial complaint has been amended, and the Court has appointed the Office of the Vermont Defender General to represent the plaintiffs with respect to their claims for injunctive relief.

<u>Discussion</u>

I.  <u>Class Certification</u>

Plaintiffs' counsel has moved to certify a class of over 1,000 Vermont inmates.  (Paper 181).  Rule 23 sets forth the prerequisites for certifying a class: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).  These requirements are generally referred to as numerosity, commonality,

typicality, and adequacy of representation.  See General Tel. Co. v. EEOC, 446 U.S. 318, 330 (1980).  The class must also satisfy Rule 23(b), which encompasses, in part, cases wherein "the party opposing the class has refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief . . . ." Fed. R. Civ. P. 23(b)(2).

The plaintiffs' motion alleges that all prerequisites under Rule 23 have been satisfied.  In opposition, the defendant argues that the plaintiff class is not sufficiently numerous as required under Rule 23(a)(1).  The defendant also claims that only Sexton has exhausted his administrative remedies, and that because Sexton is no longer housed in 24-hour lighting, he fails to satisfy the commonality, typicality, and adequacy requirements of Rules 23(a)(2), (3) and (4), respectively.

A.  Numerosity

Taking the prerequisites of Rule 23 in order, the first question is whether or not the numerosity requirement has been met.  Although there is no fixed minimum for numerosity, the Second Circuit has observed

5

that "numerosity is presumed at a level of 40 members." Consolidated Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir.), cert. denied, 515 U.S. 1122 (1995); see also Presbyterian Church v. Talisman Energy, Inc., 226 F.R.D. 456, 466 (S.D.N.Y. 2005) ("Numerosity is presumed when a class consists of forty or more members."). Here, the plaintiffs contend that the class consists of all inmates who are subjected to constant illumination. The defendant argues that mere exposure is insufficient, and that the class members must have suffered an injury. Even if the Court accepts the defendant's position, the Court has received over 50 motions to intervene from plaintiffs claiming injuries as a result of constant lighting. Therefore, the Court should deem the number of potential class members as a minimum of approximately 50 persons.

The Court should also find that joinder of these plaintiffs would not be practicable. When determining practicability, "[r]elevant considerations include judicial economy arising from the avoidance of a multiplicity of actions, geographic dispersion of class members, financial resources of class members, the

ability of claimants to institute individual suits, and requests for injunctive relief which would involve future class members." See Robidoux v. Celani, 987 F.2d 931, 936 (2d Cir. 1993).  In this case, the potential class members are alleged to be in several different locations in Vermont, and some, including McGee, have been transferred out of state.  Being inmates, the class members are economically disadvantaged, "making individual suits difficult to pursue." Id.  Finally, injunctive relief would apply to all class members, while individual suits could results in inconsistencies.  I therefore recommend that the Court find that joinder is impracticable, and that the potential class is sufficiently numerous to qualify for certification.

B.  Commonality

The second requirement, commonality, requires a showing that the prospective class members share common questions of law or fact.  Fed. R. Civ. P. 23(a)(2). Where the "claims of all proposed class members derive from the same [ ] policies and procedures, and are based on the same legal theories," the commonality requirement is met.  McNeill v. New York City Hous. Auth., 719 F.

7

Supp. 233, 252 (S.D.N.Y. 1989).  In this case, the named
plaintiffs and the members of the proposed class all base
their claims upon the implementation of a widespread
constant illumination policy.

The defendant contends that none of the named
plaintiffs satisfies the commonality requirement.  The
defendant argues that in order to be a class
representative, a named plaintiff must have exhausted his
administrative remedies *and* must be currently housed in
24-hour lighting.  According to the defendant, only Jacob
Sexton has completed the prison grievance procedure, and
Sexton is no longer confined in a constantly lit cell.
The plaintiffs respond the McGee has also exhausted his
administrative remedies.  However, McGee's claims pertain
solely to Vermont prisons, and he has been transferred
out of state.[3]

The difficulty in a case such as this is that the
prison population is, by nature, transitory.  McGee and
Sexton are both examples of the pace at which prisoners
are moved within the correctional system.  Transfers

---

[3]  McGee recently submitted a declaration, *pro se*, claiming that he is
being subjected to 24-hour lighting at his prison in Kentucky.  He has
not, however, amended his pleadings to add claims relating to correctional
facilities in states other than Vermont.

arguably moot claims for injunctive relief, and frequent transfers make it difficult for prisoners to keep their claims alive while they are exhausting their administrative remedies.  Those who are able to file suit while still being subjected to harmful conditions must then wait for a Court to consider their request for class certification.

With respect to any delay between the filing of the complaint and the consideration of a motion for class certification, the Second Circuit has held that for purposes of injunctive relief, certification may relate back to the initial complaint.  <u>See</u> <u>Comer v. Cisneros</u>, 37 F.3d 775, 799 (2d Cir. 1994); <u>Robidoux</u>, 987 F.2d at 938-39.  In this case, it appears that Sexton was being subjected to 24-hour lighting when he filed his initial complaint.  Therefore, according to the established law of this Circuit, he may continue to act as a class representative for those seeking injunctive relief. Because Sexton's claims derive from the same policies and procedures as all other members of the class, the

commonality requirement is met.[4]

C.  Typicality

The third requirement, typicality, requires that the claims or defenses of the representative party or parties be typical of those of the prospective class.  Fed. R. Civ. P. 23(a)(3).  The representative claims need not be identical to the claims of every class member in order to meet the typicality requirement.  <u>McNeill</u>, 719 F.Supp. at 252.  However, the "disputed issue of law or fact [must] occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class."  <u>Caridad v. Metro-North Commuter R.R.</u>, 191 F.3d 283, 291 (2d Cir. 1999) (internal quotations omitted).  Again, the claims being brought by the plaintiffs and the members of the prospective class all center around the defendant's use of constant illumination.  The Court should, therefore, find that the typicality requirement has been met.

D.  Adequate Protection of Class Interests

The final requirement under Rule 23(a) is that the

---

[4]  Because Sexton is an appropriate class representative, the Court need not address the question of whether exhaustion by any member of the class is sufficient, or whether, as the defendant argues, exhaustion must be accomplished by a class representative.

representative parties will fairly and adequately protect
the interests of the prospective class.  Fed. R. Civ. P.
23(a)(4).  When determining if this requirement is met, a
plaintiff must make two showings: (1) that counsel for
the prospective class is qualified, experienced, and
generally able to conduct the litigation; and (2) that
the class members, especially the representative party,
do not have interests antagonistic to one another.  See
In re Joint Eastern & Southern Dist. Asbestos Litigation,
78 F.3d 764, 778 (2d Cir. 1996).

     The Court has named the Office of the Defender
General, Prisoners' Rights Office as counsel in this case
because that Office has an expertise in prison-related
matters.  Accordingly, the Court should deem plaintiffs'
counsel as qualified to conduct this litigation.  The
defendant has made no argument to the contrary.

     The Court should also find that the class members'
interests are not antagonistic to one another. The named
plaintiffs, like the members of the proposed class, have
been subjected to constant lighting and have suffered
injuries as a result.  These claims are consistent and
complementary to those of the prospective class.  The

fact that plaintiffs Sexton and McGee may be limited to claims for damages does not impact their ability to establish facts that would be sufficient for an award of injunctive relief.  See Ellis v. Blum, 643 F.2d 68, 84-84 (2d Cir. 1981).  Accordingly, the Court should find that the plaintiffs can adequately represent the interests of the proposed class.

E.  Rule 23(b)

The plaintiffs have stated that they are bringing their class action pursuant to Rule 23(b)(2).  That rule applies when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."  Fed. R. Civ. P. 23(b)(2).  This rule has clear application here, since the defendant is obviously aware of the lighting issue and has not, to date, taken action to remedy the alleged problem. Moreover, injunctive relief on the lighting issue, if warranted, would provide a remedy for the class as a whole.  The Court should, therefore, find that the plaintiffs' motion satisfies Rule 23(b).

II.   <u>Amended Motion for Class Certification</u>

In an effort to avoid the mootness issue that arguably arises when a named plaintiff is transferred out of a constantly-lit cell, the plaintiffs have filed an amended motion seeking to certify a class of all inmates "who have resided in constantly illuminated cells in Vermont, currently reside in constantly illuminated cells in Vermont, and who will reside in constantly illuminated cells in Vermont." (Paper 187 at 1).  As discussed above, relation back to the initial filing alleviates the mootness problem.  Nonetheless, the amended motion helps to define the scope of the class.  Because the class should include inmates who are not currently being subjected to 24-hour lighting, but who are in constantly-lit cells at the time of final judgment in this case, the motion should be GRANTED to the extent that those inmates are also suffering injuries as a result of such illumination.

<u>Conclusion</u>

For the reasons set forth above, I recommend that the plaintiffs' motion for class certification (Paper 181) and amended motion for class certification (Paper

13

187) be GRANTED.  I further recommend that the class consist of inmates who have been subjected, are currently being subjected, or who will be subjected to constant illumination in Vermont prison cells and who suffer injuries as a result.  The Court has already appointed the Office of the Defender General to represent the plaintiffs, and that office should continue as counsel for the class.  Finally, pursuant to Fed. R. Civ. P. 23(c)(2)(A), the Court should not order that notice be provided to the class.

Dated at Burlington, in the District of Vermont, this 25th day of September, 2006.


                              /s/ Jerome J. Niedermeier
                              Jerome J. Niedermeier
                              United States Magistrate Judge


Any party may object to this Report and Recommendation within 10 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  See Local Rules 72.1, 72.3, 73.1; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and 6(e).