UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| DAVID MCGEE, RICHARD PAHL, JOSE TORRES, KEVIN KIMBER, DANIEL MUIR, JAMES ANDERSON, and all other inmates similarly situated,[1] Plaintiffs, v. ANDREW PALLITO, Commissioner, Vermont Department of Corrections, ROBERT HOFMAN, KEITH TALLON, CELESTE GIRRELL, JOHN GORCZYK, KATHLEEN LANMAN, MICHAEL O'MALLEY, ANITA CARBONNEL, STUART GLADDING, DANIEL FLORENTINE, RAYMOND FLUM, and CAROL CALLEA, Defendants. | No. 1:04-cv-00335-jgm |

MEMORANDUM AND ORDER ON MOTION TO DECERTIFY THE CLASS
(Doc. 344)

I. Introduction

The Court assumes familiarity with the facts and background of the case. The Plaintiffs seek an injunction barring the Vermont Department of Corrections from continuing their policy of constant illumination in prison cells. On October 16, 2006, this Court adopted the Magistrate Judge's recommendation and certified a class of "inmates who have been subjected, are currently being subjected, or who will be subjected to constant illumination in Vermont prison cells and who suffer injuries as a result." (Doc. 189.) On December 20, 2010, the Court adopted the Magistrate Judge's recommendation and granted Defendants' motion for summary judgment on the class

[1] Plaintiff Jacob Sexton has withdrawn from serving as a named plaintiff. (Doc. 326.)

claims.[2] (Doc. 288.) In short, the Court concluded the Plaintiffs had not presented evidence indicating constant illumination had caused them harm or that constant illumination of prison cells was not justified by legitimate penological interests. (Doc. 276, at 17, 20.)

Plaintiff Kevin Kimber appealed the Court's order granting summary judgment, and the Second Circuit vacated and remanded the case after concluding the Court abused its discretion in appointing as class counsel the Prisoner's Rights Office of the Vermont Defender General. See Kimber v. Tallon, 556 F. App'x 27, 28 (2d Cir. 2014). The Second Circuit explained that "[o]n remand, the district court will consider an appropriate way forward," indicating the options included "decertification of the class or appointing new class counsel for the currently certified class." Id. The Court has appointed Phillips Lytle LLC as class counsel (Doc. 325), and now addresses the Defendants' motion to decertify the class. (Doc. 344.) Defendants argue, in short, that decertification is appropriate at this time due to intervening changes in the law and new developments in the facts. (Doc. 344.) Plaintiffs opposed the motion to decertify the class (Doc. 351), and Defendants filed a reply (Doc. 360). For the reasons stated below, the motion to decertify the class is DENIED.

II. Discussion

Defendants argue new law and facts defeat commonality and typicality and require decertification. Ultimately, Defendants provide no persuasive reason to decertify the class. Their arguments fail generally for two reasons: first, Defendants fail to provide new law or evidence, and second, Defendants fail to recognize the difference in the requirements of Rule 23(b)(2) and Rule 23(b)(3) classes.

[2] The Court also granted Defendants' motion for summary judgment on certain individual plaintiffs' damages claims. (Doc. 300.)

A. Standard of Review

Under Federal Rule of Civil Procedure 23(c)(1)(C), "[a]n order that grants or denies class certification may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C). Accordingly, courts must "reassess their class rulings as the case develops." Boucher v. Syracuse Univ., 164 F.3d 113, 118 (2d Cir. 1999) (quoting Barnes v. The Am. Tobacco Co., 161 F.3d 127, 140 (3d Cir. 1998)). A court may not disturb its prior findings, however, "absent some significant intervening event or a showing of compelling reasons to reexamine the question." Gulino v. Bd. of Educ. of City Sch. Dist. of N.Y., 907 F. Supp. 2d 492, 504 (S.D.N.Y. 2012). Compelling reasons "include an intervening change of controlling law, the availability of new evidence, or the need to correct clear error or prevent manifest injustice." Id. (quoting Doe v. Karadzic, 192 F.R.D. 133, 137 (S.D.N.Y. 2000). A defendant seeking decertification of a class "bear[s] a heavy burden to prove the necessity of . . . the drastic step of decertification." Gordon v. Hunt, 117 F.R.D. 58, 61 (S.D.N.Y. 1987).

Defendants argue that since the class was certified in 2006, both the law and facts have changed. Specifically, they contend the Supreme Court's decisions in Wal-Mart v. Dukes, 131 S. Ct. 2541 (2011), and Comcast v. Behrend, 133 S. Ct. 1426 (2013), render class treatment inappropriate; new expert evidence undermines Plaintiffs' arguments twenty-four hour lighting reduces melatonin; and individual medical issues will outweigh common questions with respect to the claim that security lighting exacerbates other health conditions.

B. No New Law

There has been no relevant change in the legal landscape since this Court first certified the class in 2006. Thus, in moving to decertify the class, Defendants face a high bar.

Defendants argue the Supreme Court's decision in Wal-Mart, 131 S. Ct. 2541, "established a standard of proof plaintiffs must meet to obtain class certification and defined the proper use of Rule 23(b)(3) classes." (Doc. 344, at 8-9.) To the extent Defendants suggest Wal-Mart introduced the concept of "rigorous analysis" at the class certification stage, they are incorrect. "Rigorous analysis" -- an examination of facts supporting class certification -- is not new. See Gen. Tele. Co. of Sw. v. Falcon, 457 U.S. 147, 161 (1982) ("[W]e reiterate today that a Title VII class action, like any other class action, may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied."); Heerwagen v. Clear Channel Commc'ns, 435 F.3d 219, 225 (2d Cir. 2006), overruled in part on other grounds, Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc., 546 F.3d 196 (2d Cir. 2008). Additionally, Wal-Mart is not factually analogous to this case, because the defendants there did not have a unitary policy that the class challenged and plaintiffs sought non-incidental monetary compensation in the form of backpay. Defendants also point to the Supreme Court's decision in Comcast, 133 S. Ct. 1426, but that decision addresses the predominance requirement in a Rule 23(b)(3) class action -- this case is a Rule 23(b)(2) class seeking injunctive relief, for which there is no predominance requirement. These two decisions comprise the entirety of the "new law" on which Defendants premise their motion for decertification, but for the foregoing reasons it is not clear to the Court that Wal-Mart or Comcast alters the analysis in this Rule 23(b)(2) class action.

C. Commonality and Typicality

As explained above, Defendants have not cited an intervening change in the law of class actions. But the parties do raise new arguments concerning the commonality and typicality requirements of Rule 23(a). Before the Court's original 2006 certification order, the parties did not extensively brief these issues. Here, the Court will consider whether there is a "need to correct clear

error or prevent manifest injustice."[3] Gulino, 907 F. Supp. 2d at 504; see also Sirota v. Solitron Devices, Inc., 673 F.2d 566, 572 (2d Cir. 1982) (a court may "decertify a class if it appears that the requirements of Rule 23 are not in fact met").

1. Rule 23(a)(2) and (3) Requirements

At the certification stage, a court may consider underlying facts to determine whether Rule 23(a) is satisfied. See Falcon, 457 U.S. at 160 ("[S]ometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification issue."). It has long been the rule that a court must perform a "rigorous analysis" to determine whether the "prerequisites of Rule 23(a) have been satisfied." Wal-Mart, 131 S. Ct. at 2551 (citing Falcon, 457 U.S. at 161). Thus, as at certification, the Court considers the available facts when necessary. Any factual findings the Court makes, however, are made only for purposes of resolving this motion and will not later bind the jury at trial. See Floyd v. City of New York, 283 F.R.D. 153, 162 (S.D.N.Y. 2012). Factual findings at this stage must meet the preponderance of the evidence standard. See Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc., 546 F.3d 196, 202 (2d Cir. 2008) (holding "the preponderance of the evidence standard applies to evidence proffered to establish Rule 23's requirements").

Rule 23(a)(2) predicates class treatment on the presence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Thus, plaintiffs' "claims must depend upon a common contention that is . . . capable of classwide resolution -- which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one

[3] Plaintiffs state Defendants admitted the class satisfied the commonality and typicality requirements of Rule 23(a) in 2006 by failing to raise those requirements in their opposition to the motion to certify the class. (Doc. 182, at 1.) Because the Court finds commonality and typicality satisfied, it does not address this argument.

stroke." Wal-Mart, 131 S. Ct. at 2251. Accordingly, class treatment is appropriate when the resolution of common questions would "generate common answers apt to drive the resolution of the litigation." Id. (emphasis in original). "For purposes of Rule 23(a)(2), even a single common question will do." Bauer-Ramazani v. Teachers Ins. and Annuity Ass'n of Am. Coll. Ret. & Equities Fund, 290 F.R.D. 452, 458 (D. Vt. 2013).

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims" of the class. Fed. R. Civ. P. 23(a)(3). Typicality "is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." Floyd, 283 F.R.D. at 161 (quotations omitted). The class representatives' claims "need not be identical to the claims of every class member in order to meet the typicality requirement." Butler v. Suffolk Cty., 289 F.R.D. 80, 99 (E.D.N.Y. 2013) (citation omitted).

Defendants contend the presently certified class does not meet Rule 23(a)(2)'s commonality and typicality requirements.[4] Because Rule 23(a)'s commonality and typicality requirements "tend to merge," the Court addresses them together. Wal-Mart, 131 S. Ct. at 2551 n.5 (quotations and citation omitted).

2. Eighth Amendment Injury and the Rule 23(b)(2) Class

Defendants provide four purported reasons commonality and typicality are not satisfied: (1) class members have different pre-existing health conditions; (2) class members have different histories of exposure to twenty-four hour security lighting; (3) class members respond to twenty-four hour security lighting differently; and (4) class members live in different cell layouts with

[4] In their 2006 opposition to class certification, Defendants declined to argue Plaintiffs failed to meet the commonality and typicality requirements. (Doc. 182, at 1.)

different conditions. (Doc. 344, at 10-11.) These individualized differences, Defendants assert, preclude class treatment. The Court is not convinced.

These four factors might raise concerns if this were a Rule 23(b)(3) class seeking damages. But this is a Rule 23(b)(2) class. "The key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted -- the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" Wal-Mart, 131 S. Ct. at 2557 (quoting Richard A. Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 132 (2011). "In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant."[5] Wal-Mart, 131 S. Ct. at 2557 (emphasis in original). Rule 23(b)(2) classes originated as a tool to manage civil rights cases, where a class of people subjected to discriminatory policies sought to challenge those policies. See id. In that context, as in this one, the benefit of the injunction inures to the entire class. In Wal-Mart, the Supreme Court found a Rule 23(b)(2) class inappropriate to challenge "an enormous array of

[5] Defendants also appear to argue the fact that some class members seek damages in their individual capacities equates this case with Wal-Mart, in which the Court found monetary relief "not incidental to the injunctive or declaratory relief." 131 S. Ct. at 2557. In Wal-Mart, the Supreme Court determined the prospect of backpay for over a million workers was not incidental to injunctive or declaratory relief. The fact that individual class members are pursuing damages is both not incidental and not relevant to class certification in this case. See Daniels v. City of N.Y., 198 F.R.D. 409, 416 (S.D.N.Y. 2001) ("Here, the named plaintiffs are seeking money damages for themselves but are only seeking declaratory and equitable relief for the class they wish to represent. The fact that the named plaintiffs are seeking damages on their own behalf does not make them inappropriate as class representatives.") (quotations omitted). In fact, the Rules provide procedures for managing injunctive classes when some members seek damages. See Gulino, 907 F. Supp. 2d at 506 (for example,"[d]istrict courts frequently use Rule 23(c)(4) to bifurcate proceedings by first certifying an 'injunctive' class under (c)(4) to determine liability, and then certifying a 'remedial' class under (b)(3) to determine damages.").

different employment practices," see Davis v. City of New York, 296 F.R.D. 158, 165 (S.D.N.Y. 2013), but here the Plaintiffs challenge one policy that affects each of them. Whether the prisons' constant illumination policy violates the Eighth Amendment rights of prisoners is an appropriate question for class treatment. See Butler, 289 F.R.D. at 101 (certifying a Rule 23(b)(2) class of prisoners challenging constitutionality of prison conditions in violation of the Eighth and Fourteenth Amendments).

The fundamental differences between Rule 23(b)(2) and Rule 23(b)(3) classes also defuse Defendants' arguments concerning ascertainability.[6] "[W]here the primary relief sought is injunctive rather than compensatory, as here, it is not clear that the implied requirement of definiteness should apply to Rule 23(b)(2) class actions at all." Davis, 296 F.R.D. at 164-65 (citations and quotations omitted). Defendants appear to acknowledge their ascertainability argument would only apply to a Rule 23(b)(3) class, stating: "In a case where individual class members may be entitled to damages, a court must be able to identify class members without the need for extensive factual determinations." Doc. 344, at 12 (emphasis added). Were this a Rule 23(b)(3) class, the Court would have to consider whether the class was ascertainable and therefore manageable.

Similarly, the Defendants efforts to analogize this case to a toxic torts case might be persuasive if this were a Rule 23(b)(3) class. Defendants provide In re Fosamax Prods. Liab. Litig.,

---

[6] Defendants also argue the class definition renders the class "fail-safe" because it includes the phrase "and who suffer injuries as a result." See Schilling v. Kenton Cnty., Ky., No. 10-cv-143, 2011 WL 293759, at *6 (E.D. Ky. Jan. 27, 2011) ("A fail-safe class is 'defined by the merits of [the plaintiffs] [sic] legal claims, and [is] therefore unascertainable prior to a finding of liability in the plaintiffs' favor.") (quoting Velazquez v. HSBC Fin. Corp., No. 08-cv-4592, 2009 WL 112919, at *4 (N.D. Cal. Jan. 16, 2009). Yet, as Plaintiffs point out, Defendants requested this phrase be included. (Doc. 188, at 6.) The Court need not address the issue of judicial estoppel (Doc. 351-2, at 23) because it finds ascertainability is not a requirement for this Rule 23(b)(2) class. See Floyd, 283 F.R.D. at 172 ("Both the Second Circuit and numerous district courts in the circuit have approved of class definitions without precise ascertainability under Rule 23(b)(2).").

248 F.R.D. 389 (S.D.N.Y. 2008), to support their assertion commonality and typicality are not satisfied. Fosamax is, on its face, difficult to analogize to this case because it dealt with a Rule 23(b)(3) class which asserted claims for medical monitoring. But even disregarding these obvious differences, the type of injury at stake here differs from that in a toxic torts case in two key respects. First, the Eighth Amendment inquiry is whether (1) the constant illumination policy in question poses an unreasonable risk of serious damage to health, and (2) prison officials were deliberately indifferent to the risk. See Holmes v. Grant, No. 03-cv-3426, 2006 WL 851753, at *12 (S.D.N.Y. Mar. 31, 2006). The alleged injuries are not solely the alleged harmful physiological effects of constant illumination, but the exposure to the risks allegedly caused by constant illumination. See, e.g., Chief Goes Out v. Missoula Cnty., No. 12-cv-155, 2013 WL 139938, at *5 (D. Mont. Jan. 10, 2013) ("The U.S. Supreme Court, the Ninth Circuit, and other courts have long recognzied [sic] that, in prison condition cases like this one, the injury is the depravation itself, not just the negative effects resulting from the depravation."). Thus, under the Eighth Amendment, the common issue is class members' alleged exposure, as a result of a specified policy of constant illumination, to a substantial risk of serious harm to which the defendants are allegedly indifferent. See Parsons v. Ryan, 754 F.3d 657, 678 (9th Cir. 2014) (upholding certification of a Rule 23(b)(2) class for Eighth Amendment violations because "although a presently existing risk may ultimately result in different future harm for different inmates -- ranging from no harm at all to death -- every inmate suffers exactly the same constitutional injury when he is exposed to a single statewide . . . policy or practice that creates a substantial risk of serious harm."). This Eighth Amendment injury, the risk of harm due to exposure, differs from the more concrete injuries addressed in Fosamax and other toxic torts cases. Second, Plaintiffs challenge the constitutionality of a specific policy rather than seeking compensation for connected acts of negligence. See Schilling, 2011 WL 293759, at *7 (although a

civil rights case may be "framed as a mass tort suit" and denied certification if alleged injuries vary greatly, certification is appropriate to challenge "very specific policies") (emphasis in original); see also Mack v. Suffolk Cnty., 191 F.R.D. 16, 23 (D. Mass. 2000) (commonality and typicality satisfied in class challenging constitutionality of a "blanket strip-search policy"). The issue for this Rule 23(b)(2) class is whether the policy is unconstitutional, not whether numerous similar actions taken by the Defendants caused damages. Of course, the facts resemble a toxic torts case, in that potentially many class members may have suffered physiological injuries. But the common questions -- the extent to which Defendants' policy of constant illumination creates a risk of disrupting inmates' circadian rhythms, sleep, and melatonin production and whether those conditions pose a reasonable risk of serious damage to health -- frame the ultimate question of whether the Defendants' policy violates the Constitution, such that they should be enjoined from implementing it.

The Court recognizes Defendants' Rule 23(b)(3)-related arguments, though irrelevant to the issue at hand, reflect a concern Plaintiffs will ultimately seek to certify a Rule 23(b)(3) class. Indeed, Plaintiffs indicate they intend to eventually pursue that course. (Doc. 351-2, at 28.) That case might raise administrative difficulties, because as Defendants argue, individual class members have different pre-existing health conditions, different histories of exposure to constant illumination, respond to constant illumination differently, and live in different cell layouts. Individual questions might predominate over common questions. See Fed. R. Civ. P. 23(b)(3). Ascertainability concerns might arise, because many prisoners have come and gone through Vermont prisons and been exposed in varying degrees to constant illumination. But that issue is not before the Court now. If and when Defendants move to certify a Rule 23(b)(3) class, the parties will have the opportunity to address the appropriateness of class treatment for determining damages. For now, the parties must

identify the circumstances under which low-level constant illumination can cause Eighth Amendment injury, which should be the critical question for a class seeking to enjoin the Defendants from implementing their constant illumination policy. Cf. Chappell v. Mandeville, 706 F.3d 1052, 1058 (9th Cir. 2013) (granting prison officials qualified immunity because it is not clearly established law that constant illumination of a cell for a period of only seven days violates the Eighth Amendment).

3. Common Questions of Law and Fact

Defendants argue "certification was granted without any evidence supporting the merits of Plaintiffs' claims." (Doc. 344, at 12.) In 2006, the Court analyzed the Rule 23(a) requirements and found them satisfied. The Court found commonality satisfied because "the named plaintiffs and the members of the proposed class all base their claims upon the implementation of a widespread constant illumination policy." Doc. 188-1, at 7-8; see also McNeil v. N.Y. City Hous. Auth., 719 F. Supp. 233, 254 (S.D.N.Y. 1989) (finding commonality satisfied where "[t]he claims of all proposed class members derive from the same . . . policies and procedures, and are based on the same legal theories"). There is no dispute Defendants implement a constant illumination policy common to all class members, and whether that policy harms class members is a common question of fact. See In Re Fosamax, 248 F.R.D. at 398 ("Because the class members' claims share at least one common question of fact, the commonality requirement is met."). A review of clashing expert affidavits reveals the case presents at least two more specific common questions of fact::[7] (1) the extent to which Defendants' policy of constant illumination disrupts inmates' circadian rhythms, sleep, and melatonin production, and (2) whether those conditions pose a reasonable risk of serious damage to

---

[7] Plaintiffs observe in briefing that other common questions exist, including whether Defendants are deliberately indifferent to the alleged risk. (Doc. 351-2, at 14.)

health. Each of these contentions is "capable of classwide resolution" because "determination of its truth or falsity will resolve an issue that is central to the validity of each one of [Plaintiffs'] claims in one stroke." Wal-Mart, 131 S. Ct. at 2251. The Court concludes, based on the following, that Plaintiffs have established the existence of these common questions of fact by a preponderance of the evidence.[8]

An Eighth Amendment violation requires a reasonable risk of serious damage to health. See Holmes, 2006 WL 851753, at *12. Plaintiffs' expert, Dr. Steven Lockley, sets out the two-step causation analysis that, if true, makes out this risk. First, twenty-four hour lighting "disrupts natural circadian rhythm, disrupts sleep, and suppresses the production of melatonin." (Doc. 351-1, ¶ 18.) After reviewing Vermont prisons' "lighting wattage, the distance from the prisoner's head to the 24-hour light, the cell width, length, and height, and the type of bulb used," Dr. Lockley concluded prisoners subjected to those conditions "will experience circadian disruption, sleep disruption, and melatonin suppression." (Id. ¶ 23-24.) Next, "[c]ircadian disruption, sleep disruption, and melatonin suppression are harmful to human health," and can cause "diabetes, hypertension, heart disease, depression, and hormone-dependent cancers such as prostate cancer and breast cancer," among other harmful conditions. (Id. ¶ 13.) Dr. Lockley asserts a "substantial risk" of developing these conditions "is common to all individuals who experience circadian disruption, sleep disruption, and melatonin suppression." See id. ¶¶ 14-15 (emphasis in original). Lockely also states the effect of constant illumination "is the same for all individuals as a matter of human physiology; individual characteristics do not change the fact that the human brain reacts to light at night,"

---

[8] It is not clear to the Court that Defendants present any new facts relevant to determining the appropriateness of class certification. But out of an abundance of caution and in consideration of the parties' thin presentation on commonality and typicality in 2006, the Court now weighs these requirements below to ensure Rule 23(a)'s requirements remain satisfied at this time.

"regardless of differences in [exposed individuals'] personal background[s]." (Id. ¶ 28.) Dr. Lockley's affidavit allows the Court to conclude, by a preponderance of the evidence, that two questions common to all class members exist: under what conditions constant illumination disrupts circadian rhythm, sleep, and melatonin production, and whether circadian rhythm, sleep, and melatonin disruption cause harmful health effects.

Defendants argue these are not common questions with common answers. First, they argue Dr. Lockley's assertions are wrong on the merits, and that certification is inappropriate. In their motion, Defendants cite Professor Russel J. Reiter's 2009 affidavit (Doc. 250-1) as evidence Plaintiffs "could not meet their burden with respect to the theory that twenty-four hour security lighting reduces melatonin production" when they opposed Plaintiffs' motion for court contribution to expert fees. (Doc. 344, at 9.) Professor Reiter concluded the level of lighting used in Vermont prisons under Defendants' constant illumination policy was too low to have any link with changing melatonin levels. (Doc. 250-1, ¶¶ 8-9.) In their reply to the present motion, Defendants submit the affidavit of Professor Scott Davis, who opines Dr. Lockley's affidavit is "not supported by the scientific literature." (Doc. 360-1, ¶ 8.) First, Dr. Lockley "fails to recognize that inmates will have different exposure levels corresponding to different exposure circumstances," comparing by way of example an inmate exposed to constant illumination for merely seven days with an inmate exposed to constant illumination for a month. (Id. ¶ 9.) Second, Dr. Lockley "incorrectly asserts that the relationship between light at night and the development of the health conditions he cites is a causal one." (Id. ¶ 12.) Professor Davis' argument, paraphrased, is that the leap from constant illumination to disruption of circadian rhythm, sleep, and melatonin production to health risks is more attenuated than Dr. Lockley's affidavit suggests. Professor Davis cites a recent publication of Dr. Lockley which appears to concede this fact, stating: "It is not certain that [modern alterations in

lighting], in fact, can increase breast cancer risk; that evidence is accumulating but is not yet conclusive." Id. ¶ 16 (citing Stevens, Richard G., et al., Breast Cancer and Circadian Disruption From Electric Lighting in the Modern World, CA: A Cancer Journal for Clinicians, 2014; 64: 207-218). These are potentially compelling factual arguments as to why Dr. Lockley may be wrong. But at the certification stage, the question is whether common questions with common answers exist, not whether Plaintiffs are certain to be right about those answers. See Wal-Mart, 131 S. Ct. at 2551 (finding class treatment appropriate when common questions would "generate common answers apt to drive the resolution of the litigation") (emphasis in original); see also Allen v. Dairy Farmers of Am., Inc., No. 5:09-cv-230, 2012 WL 5844871, at *11 (D. Vt. Nov. 19, 2012) ("As no court has apparently required that the case be actually proven at the class certification stage, the court need only determine whether Plaintiffs have adduced sufficient admissible evidence which, if deemed credible, would establish by a preponderance of the evidence . . . injury based upon evidence common to the class.") (emphasis in original). Professor Davis's contention here is that constant illumination does not increase breast cancer risk, not that the question of whether constant illumination can increase breast cancer risk cannot be resolved on a classwide basis. The class should not be decertified on these grounds.

Second, Defendants appear to take the position that both the violation and the harm must be common, and reason that commonality cannot be met because Plaintiffs' expert has not specified "the intensity of the light, the length of exposure, the conditions under which the exposure occurs, or any other limiting factor." (Doc. 344, at 13.) The theory is that due to differences in exposure, class members will suffer varying injuries -- if any -- such that class treatment is inappropriate. See, e.g., id. ¶ 10. The fact that class members experience injuries varying in type and kind, however, is no bar to class treatment here, as "even after Wal-Mart, Rule 23(b)(2) suits remain appropriate

mechanisms for obtaining injunctive relief in cases where a centralized policy is alleged to impact a large class of plaintiffs, even when the magnitude (and existence) of the impact may vary by class member." Floyd, 283 F.R.D. at 173; see also Marisol A. v. Giuliani, 126 F.3d 372, 377 (2d Cir. 1997) (finding district court did not abuse its discretion in certifying a Rule 23(b)(2) class when "plaintiffs allege[d] that their injuries derive[d] from a unitary course of conduct by a single system").

Third, Defendants argue Plaintiffs do not satisfy typicality because they do not assert physiological injuries that are shared by all class members and named plaintiffs. (Doc. 344, at 16.) As discussed above, however, injuries may vary in scope and kind so long as they stem from the policy Plaintiffs complain of. The common thread is that these varied harmful effects of constant illumination all violate the Eighth Amendment, and all extend from a unitary policy. Furthermore, the class seeks injunctive relief to remedy a constitutional injury. Defendants also cite to the Court's order granting their motion for summary judgment (Doc. 188-1), in which the Court concluded no named plaintiff could demonstrate a connection between the injuries complained of and constant illumination. Of course, the Circuit has vacated that order on the basis that the class was not adequately represented. Defendants might succeed on summary judgment again if Plaintiffs cannot put forward a single class member who has suffered harm due to constant illumination or fail to present any other sufficient evidence that constant illumination creates a risk of harm. But the Court declines to decertify the class on the basis of specific facts found and proved during the course of inadequate class counsel's representation. That would run contrary to the spirit of the Circuit's order.

III. Defendants' Proposed Stay

In their reply, Defendants propose staying the motion to decertify the class to allow for discovery related to class certification issues as an alternative to decertification and dismissal. (Doc.

360, at 6.) Defendants argue Plaintiffs cannot satisfy the requirements of Rule 23(a) by a preponderance of the evidence because Dr. Lockley's affidavit is inadmissible under Fed. R. Evid. 702. See Fed. R. Evid. 702 (establishing the standard for admissibility of "scientific, technical, or other specialized knowledge"). This request is denied.

The Court finds Dr. Lockley's affidavit is admissible. "In evaluating expert testimony, the court must focus on the principles and methodology employed by the expert, without regard to the conclusions the expert has reached or the district court's belief as to the correctness of these conclusions." Allen v. Dairy Mktg. Servs., LLC, No. 5:09-cv-230, 2013 WL 6909953, at *2 (D. Vt. Dec. 31, 2013) (quoting Amorgianos v. Nat'l R.R. Passenger Corp., 303 F.3d 256, 266 (2d Cir. 2002)). Defendants argue the affidavit of their expert, Professor Davis, establishes Dr. Lockley's affidavit is inadmissible. See Doc. 360-1, ¶ 8 ("Dr. Lockley's opinions as expressed in his affidavit are not supported by the scientific literature in two fundamental respects."). First, Professor Davis opines Dr. Lockley's assertion "that the security lights at issue are sufficient to disrupt circadian rhythms" is incorrect "because it fails to recognize that inmates will have different exposure levels corresponding to different circumstances." (Id. ¶ 9.) But this rebuttal elides the issue -- Professor Davis argues exposure will be necessarily different among class members, see, e.g., id. ¶ 10 ("not all individuals have the same level of melatonin reduction when exposed in the same manner to the same level of light at night"), because as discussed above, evidence of different inmates' varying responses to constant illumination does not preclude finding commonality and typicality are met. Second, Professor Davis argues "Dr. Lockley incorrectly asserts that the relationship between light at night and the development of the health conditions he cites is a causal one." (Id. ¶ 12.) In support, Professor Davis asserts that "these areas of research remain inconclusive" (id. ¶ 15) and argues Dr. Lockley's affidavit contradicts his own recent publication (id. ¶ 16 (citing Stevens,

Richard G., et al., Breast Cancer and Circadian Disruption From Electric Lighting in the Modern World, CA: A Cancer Journal for Clinicians, 2014; 64: 207-218)). But there is no reason Professor Davis' bald assertion that research on causation is inconclusive should preclude all consideration of Dr. Lockley's affidavit, and the cited publication is consistent with Dr. Lockley's affidavit in that it supports the theory that light at night increases breast cancer risk. See id. at 207-218 ("[p]redictions of the theory [that exposure to light at night would result in melatonin suppression which would, in turn, increase breast cancer risk] have been supported."). In sum, Professor Davis's disagreements with Dr. Lockley's affidavits do not indicate Dr. Lockley's testimony is based on insufficient "facts or data," that his testimony is not "the product of reliable principles and methods," or that he has not "reliably applied the principles and methods to the facts of the case."[9] Fed. R. Evid. 702.

Furthermore, the Court notes that although the class must be decertified if Plaintiffs cannot satisfy Rule 23(a)'s requirements, it would be illogical to decertify a class simply because new, additional evidence in support of certification is inadmissible. See Karadzic, 192 F.R.D. at 136 ("Although at least one district court has concluded that the burden of persuasion remains throughout the litigation with the party desiring to maintain certification, the Court may not disturb

---

[9] The Court's assessment of Dr. Lockley's affidavit is buoyed by the findings of other courts that constant illumination can cause Eighth Amendment injury. See, e.g., Keenan v. Hall, 83 F.3d 1083, 1091-92 (9th Cir. 1996) (denying summary judgment motion with respect to an Eighth Amendment claim based on constant illumination where plaintiff produced evidence of sleeping problems due to twenty-four hour lighting despite defendant's contrary evidence that such lighting would not cause sleeping problems); LeMaire v. Maass, 745 F. Supp. 623, 636 (D. Or. 1990), vacated on other grounds, 12 F.3d 1444 (9th Cir. 1993) ("There is no legitimate penological justification for requiring plaintiff to suffer physical and psychological harm by living in constant illumination. This practice is unconstitutional."); Shepherd v. Ault, 982 F. Supp. 643, 648 (N.D. Iowa 1997) ("Constant illumination can undoubtedly cause sleep deprivation -- indeed, that is the precise reason these plaintiffs assert constant illumination constituted an Eighth Amendment violation -- and sleep is certainly an identifiable human need.") (quotations omitted); but see Walker v. Woodford, 454 F. Supp. 2d 1007, 1014-15 (S.D. Cal. 2006) (collecting cases in which constant illumination did not violate the Constitution), aff'd in part, 393 F. App'x 513 (9th Cir. 2010).

its prior findings absent some significant intervening event."). The class has been certified, and it is not clear that removing Dr. Lockley's affidavit from the record would, without more, require decertification.

IV. Conclusion

Based on the foregoing, the motion to decertify the class (Doc. 344) is DENIED.

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 4th day of September, 2015.

/s/ J. Garvan Murtha
Honorable J. Garvan Murtha
United States District Judge